## UPTON v. DOLSBY.

### No. 4910.

Court of Civil Appeals of Texas. Amarillo.

July 9, 1938.

Rehearing Denied Sept. 12, 1938.

G. C. Harney, of Borger, for appellant.

S. E. Fish, of Amarillo, for appellee.

FOLLEY, Justice.

This suit was filed by the appellant, C. C. Upton, against the appellee, C. L. Dolsby. The appellant alleged that in the month of March, 1935, the appellee requested him to join appellee in the execution of a certain note in the sum of $1,162.56 for the purchase of a two ton Reo Speed Wagon truck from L. A. Keck of the Keck Reo Company of Amarillo, Texas; that at such time the appellee was the owner of a Dodge truck and trailer and was then engaged in hauling beer for appellant from Golden, Colorado, to Borger, Texas; that such Reo Speed Wagon truck was purchased and that both the appellee and appellant signed the above note and mortgage to the C. I. T. Corporation, payable in twelve monthly installments of $96.88 each; that appellee traded in his old truck and trailer as a part of the consideration for the new truck; that at the time of the execution of the note and mortgage the appellant and appellee agreed between themselves that if appellant made any payments on the note that the appellant should have a mortgage lien upon the truck to secure such advances; that it was further agreed between the parties that if appellant advanced any money to the appellee in his beer hauling business, or if the appellee became indebted to appellant in any way in such business, that the appellant was to have a mortgage lien upon the new truck to secure the payment of such indebtedness; that on or about October 1, 1935, after several months operations of the beer hauling business, the credit due the appellee by the appellant for the business was $2,114.70 and the total amount of appellee's indebtedness to appellant was $6,185.14; that the appellant was compelled to pay the C. I. T. Corporation note; that appellant had taken said truck into his possession; that there was a trailer purchased by appellee as a part of the truck equipment which was paid for by the appellant and that a lien was also given on it by the appellee to the appellant; that such liens were verbal but binding upon the appellee; and the appellant prayed for judgment for his debt and for foreclosure of his liens.

The appellee denied that he ever agreed to give the appellant a mortgage upon the truck or trailer; denied that the appellee was indebted to the appellant and alleged that any sums paid by appellant to the C. I. T. Corporation on the truck were paid out of the funds held by appellant belonging to the appellee; and that an accounting should be made by the appellant from his records to show the exact amount due the appellee. By way of cross action the appellee alleged he was a married man and the head of a family; that the truck and trailer in question were exempt from forced sale; that on October 1, 1935, the appellant wrongfully and maliciously and without legal right took possession of the truck and trailer and appropriated it to his own use and benefit to appellee's injury in the sum of $1,250 as actual damages for the value of the truck and trailer, $250 per month from date of wrongful taking of truck and trailer to date of trial as the actual damages for the loss of use of such

property, and $1,000 as exemplary damages, for all of which the appellee prayed judgment.

At the time this action was filed by appellant he also filed his affidavit and bond for sequestration, and the sheriff took said truck and trailer on October 1, 1935, and delivered both truck and trailer to the appellant. On November 14, 1935, the appellee filed a motion to quash the sequestration which was sustained by the court on April 15, 1937. While said truck and trailer were in the hands of the appellant under the sequestration proceedings, he used them as his own; and a few weeks prior to the trial he sold the truck at private sale without notice to appellee and gave the appellee no credit for the amount received at such sale.

The cause was tried before the court without a jury. The court found that the appellee was indebted to the appellant in the sum of $1,070.44; that the appellant was indebted to the appellee by virtue of his wrongful taking and disposing of the property, in the sum of $1,800 actual damages and $250 exemplary damages; that appellant did not have a mortgage lien upon the truck or trailer; and that by offsetting the claims and debts of the parties each against the other the appellant was indebted to the appellee in the sum of $979.56, for which judgment was rendered against the appellant.

The chief complaint of the appellant is with reference to the finding of the trial court that there was no mortgage given by appellee in favor of appellant upon the truck. The appellant contends the evidence is insufficient to support such finding. Upon the insufficiency of the evidence on such finding we must disregard all the testimony except that favorable to appellee upon the issue.

The appellee himself specifically denied that any such mortgage was ever given by him. His testimony was corroborated by that of L. A. Keck, the one who consummated the deal for the truck. Keck had been trying to sell the appellee the truck for some time before the deal was finally closed. He had made an agreement with the appellee as to the trade in value of appellee's old truck. The finance company had agreed to accept appellee's paper provided the appellant would sign the note as surety for the appellee. Keck made a trip from Amarillo to Borger to see the appellant in regard to his signing the note, at which time the appellant agreed to become surety for the appellee. At this time, if there was any desire expressed by appellant as to a second lien on the truck, the testimony is silent in that regard.

The deal was closed a few days later in the office of the appellant in Borger. Keck was present during all the time in which the deal on the truck was closed. He testified that during the time the papers were being signed the appellee said he would protect the appellant if he (appellee) did not pay for the truck, but the witness could not say that the word "mortgage" was ever used by the parties; that what was said was so indefinite and uncertain the witness suggested as he was leaving that the appellant and appellee put into writing whatever agreement they wished to make between themselves. The testimony further reveals that at the time of the purchase of the truck the appellee was operating his beer hauling business at a profit, and that the appellant was keeping appellee's account at his office and paying appellee periodically the sums of money due him. Under such circumstances we think the court was authorized to conclude that the "protection" that appellant was to have was the privilege of holding out of the appellee's credits such funds as had been expended in his behalf by the appellant. The court's findings in this connection stated that there was something said about the appellant being protected but there was nothing definite agreed upon, and that appellant was not given or promised a mortgage by the appellee. Although A. L. Butts, bookkeeper for the appellant, was also present when the deal was closed and testified that a second lien was promised, the court was at liberty to accept the testimony of Keck instead of Butts as being the true version of the transaction. From all the facts and circumstances in this case we cannot hold that the trial court was wholly unauthorized to make such a finding.

The appellant makes a similar complaint as to the court's finding that no mortgage was given by the appellee to the appellant upon the trailer purchased independently from the transaction in regard to the truck. All the testimony on this issue is from the parties themselves and the court was privileged to believe the

version of one of the parties and reject that of the other. Therefore, we could not disturb this finding by the trial court.

The appellant has several assignments in connection with other findings of the trial court, and as to the admission and rejection of certain testimony, all of which, we think, as presented, are without merit; and, in view of the record in this case, we deem it unnecessary to discuss such assignments other than to say that they are overruled.

Finding no reversible error in the record the judgment of the trial court is affirmed.